# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **JORGE GARCIA,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No. 1:21-CV-01063-SH** |
| | § | |
| **ALVIN ZIMMERMAN and** | § | |
| **M.S.A., INC.,** | § | |
| *Defendants* | § | |

## <u>ORDER</u>

Before the Court is Defendants' Partial Motion for Summary Judgment as to Plaintiff's Claims of Gross Negligence, Negligent Hiring, Training, Supervision, and Retention, filed July 21, 2023 (Dkt. 32). On March 20, 2023, the District Court reassigned this case to this Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1), Federal Rule of Civil Procedure 73, and Rule CV-72 of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules"). Dkt. 20.

## I.   Background

Plaintiff Jorge Garcia was driving northbound in the right lane of Interstate Highway 35 in Travis County, Texas on July 29, 2020, when Alvin Zimmerman allegedly "failed to maintain a proper lookout and made an unsafe lane change into Plaintiff's lane of travel," crashing into the driver's side of Garcia's vehicle. Plaintiff's Original Petition, Dkt. 1-6 ¶ 6. Garcia alleges that: "The force of Defendant Zimmerman's impact caused Plaintiff's vehicle to spin on IH-35 and end up in front of Defendant's Peterbilt freight truck, where Defendant's vehicle again struck Plaintiff's vehicle on the driver's side, causing more damage." *Id.* It is undisputed that Zimmerman was working in the course and scope of his employment for Defendant M.S.A., Inc. ("MSA") at the time of the collision. MSA's Answer to Plaintiff's Interrogatory No. 13, Dkt. 33-4 at 6.

Garcia filed suit in state court, alleging: (1) negligence and gross negligence against Zimmerman; (2) vicarious liability against MSA under the doctrine of *repondeat superior* for Zimmerman's negligence and gross negligence; and (3) negligent hiring, training, supervision, and retention against MSA. *Garcia v. Zimmerman*, Cause No. D-1-GN-21-005507 (455th. Dist. Ct. Travis County, Tex. Sept. 21, 2021); Dkt. 1-6. Garcia seeks more than $250,000 in personal injury and property damages, as well as attorney's fees.

Defendants removed the case to federal court based on diversity jurisdiction pursuant to 28 U.S.C. § 1441(b). Dkt. 1. The parties have engaged in written discovery and Zimmerman has been deposed. Defendants seek partial summary judgment on Garcia's claims of gross negligence and negligent hiring, training, supervision, and retention. Garcia did not respond.

## II.   Summary Judgment Standard

Summary judgment will be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute over a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that no evidence supports the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence and so cannot defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.*

The party opposing summary judgment must identify specific evidence in the record and articulate the precise manner in which that evidence supports its claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.   Plaintiff's Failure to Respond

Garcia did not respond to Defendants' Motion for Summary Judgment. Under Local Rule CV-7(e)(2), if no response to a motion is filed within the time prescribed by the rule – here, 14 days – the court may grant the motion as unopposed. A motion for summary judgment "cannot be granted simply because there is no opposition, even if the failure to oppose violated a local rule." *Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). But "if no response to the motion for summary judgment has been filed, the court may find as undisputed the statement of facts in the motion for summary judgment." *Brown v. U.S. Postal Inspection Serv.*, 206 F. Supp. 3d 1234, 1242 (S.D. Tex. 2016); *accord Eversley v. MBank Dallas*, 843 F.2d 172,

3

174 (5th Cir. 1988) (finding that district court properly "accepted as undisputed" facts in defendant's motion for summary judgment when plaintiff filed no response to motion).

## IV.   Analysis

As stated, Defendants seek summary judgment on Garcia's claims for gross negligence and negligent hiring, training, supervision and retention. The Court grants summary judgment to Defendants as to these claims.

### A.  Gross Negligence Claim against Zimmerman

Garcia asserts both negligence and gross negligence against Zimmerman. In support of his negligence claim, Garcia alleges that Zimmerman was negligent in failing to (1) maintain a proper lookout while driving on a public roadway; (2) use due caution, given the conditions and circumstances on the roadway; (3) maintain proper control of his vehicle; (4) apply the brakes properly or at all to avoid the collision; (5) maintain proper attention while driving on a public roadway; (6) control the speed of his vehicle; (7) control his vehicle to avoid the collision; (8) use the degree of care a person of ordinary, reasonable prudence would have used under similar conditions; (9) maintain a single lane of travel; (10) make a safe lane change; and (11) make a proper lane change; and in (12) violating Chapter 545 of the Texas Transportation Code. Dkt. 1-6 ¶ 12. Garcia relies on these same allegations to support his gross negligence claim, further alleging:

> Defendants' acts and omission of making an unsafe lane change
> while driving a Peterbilt freight truck on the interstate highway,
> when viewed objectively from the standpoint of Defendants at the
> time of the incident, involved an extreme degree of risk, considering
> the probability and magnitude of the potential harm to others; and
> of which Defendants had actual, subjective awareness of the risk
> involved, but nevertheless proceeded with conscious indifference to
> the rights, safety, or welfare of others. Accordingly, Defendants
> [sic] acts amount to gross negligence, which proximately caused
> Plaintiff's injuries and damages.

*Id.* ¶ 17.

4

Defendants argue that "the list of alleged acts or omissions which Plaintiff contends were committed by Defendant do not rise above the level of a garden variety negligence case *even if* Plaintiff can prove that Defendant Zimmerman committed every single one of those alleged acts or omissions." Dkt. 32 at 10. The Court agrees.

When, as here, jurisdiction is based on diversity, courts apply the forum state's substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Texas law, a plaintiff may obtain exemplary damages if he proves by clear and convincing evidence that the harm resulted from gross negligence. TEX. CIV. PRAC. & REM. CODE § 41.003(a)(3). To show gross negligence, the plaintiff must prove both objective and subjective elements. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). The plaintiff must prove by clear and convincing evidence that (1) "when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others," and (2) "the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." *Id.* Evidence of simple negligence is not enough to prove either the objective or subjective elements of gross negligence. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998).

"Under the first, objective element, an extreme risk is not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff," which is "a threshold significantly higher than the objective reasonable person test for negligence." *Medina v. Zuniga*, 593 S.W.3d 238, 247, 249 (Tex. 2019) (cleaned up). To establish the subjective component, the plaintiff must show the defendant "knew about the risk, but that the defendant's acts or omissions demonstrated indifference to the consequences of its acts." *Waldrip*, 380 S.W.3d

at 137. The risk should be "examined prospectively from the perspective of the actor, not in hindsight." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008). A party cannot be liable for gross negligence "when it actually and subjectively believes that circumstances pose no risk to the injured party, even if they are wrong." *Waldrip*, 380 S.W.3d at 141.

*Medina* is relevant to the Court's determination whether Zimmerman's alleged acts and omissions in this case rises to the level of gross negligence. In that case, a pedestrian sued Christopher Medina, a minor driver, for negligence and gross negligence after Medina's truck hit Zuniga from behind as Medina pulled out of a school parking lot. 593 S.W.3d at 241. At trial, Medina conceded ordinary negligence but contested the plaintiff's gross negligence claim. *Id.* The jury found Medina liable for both negligence and gross negligence. *Id.* He appealed the jury's gross negligence finding, arguing that no evidence supported a conclusion that his actions rose above ordinary negligence. *Id.* at 247.

The evidence at trial showed that Medina: (1) "mess[ed]" with another driver just before the accident by shifting his truck into reverse and backing toward the other driver; (2) accelerated rapidly through the parking lot; (3) did not stop at the parking lot exit and looked only to his left before exiting and hitting Zuniga, who was approaching from the right; (4) attempted to brake before he struck the plaintiff but effectively braked only after the impact; (5) testified that he was aware other people were on campus at the time of the accident; and (6) drove on the sidewalk as he exited. *Id.* at 248. The Court of Appeals for the Fourth District of Texas found this evidence sufficient to support the jury's gross negligence finding. *Id.* The Texas Supreme Court reversed, holding that Medina's "clearly negligent conduct" did not satisfy the objective component of gross negligence. *Id.* at 249. The court emphasized that:

> The objective gross-negligence standard must remain functionally distinguishable from ordinary negligence. As to the objective component, an extreme degree of risk is a threshold significantly higher than the objective reasonable person test for negligence. An act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent. Viewing the evidence in favor of the jury's verdict, no doubt exists that Medina's driving was thoughtless, careless, and risky. But any driver knows that our roads are replete with thoughtless, careless, and risky drivers. Gross negligence can be supported only by an *extreme* degree of risk, not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff.
>
> ***
>
> Any of Medina's negligent acts here are common ingredients in a garden-variety car accident, whether involving a pedestrian or another vehicle. Doubtless, the failure to drive at a safe speed and the failure to look both ways before exiting a parking lot makes an accident more likely. But those failures, even taken together, do not amount to gross negligence. If they did, punitive damages would be routinely available in the most common types of auto accidents. Whatever the threshold for gross negligence is, it must be higher than that.

*Id.* at 249-50 (cleaned up); *see also Moerbe v. Adcock*, No. 1:20-CV-1018-RP, 2022 WL 5568119, at *8 (W.D. Tex. Aug. 3, 2022) (granting summary judgment on gross negligence claim in a "garden variety" car collision negligence case); *Marr v. Croxton*, No. SA-21-CV-00961-XR, 2022 WL 2346622, at *3 (W.D. Tex. June 29, 2022) (granting summary judgment on plaintiff's gross negligence claim in lane-change accident case in which defendant did not see plaintiff's vehicle before changing lanes because a "garden-variety vehicle collision, such as this one, cannot form the basis of a gross negligence claim").

Like *Medina*, this is "a garden-variety" ordinary negligence case that does not rise to the level of gross negligence. The unrefuted summary judgment evidence shows that the accident occurred when Zimmerman "made an unsafe lane change to the right and crashed the right front side of his truck tractor in to the left side of [Garcia's vehicle] causing damage." Crash Report, Dkt. 33-1 at

3. Zimmerman told the Austin Police Department officer on the scene that "he was trying to change lanes to the right and [Garcia's vehicle] was in his blind spot." *Id.* Zimmerman testified at deposition that he was driving in the center lane and changed lanes to the right to pass another vehicle "that was driving real slow in the center lane" when he hit Garcia. Zimmerman Tr. at 53:18-54:3, Dkt. 33-2 at 7-8. Zimmerman testified that he never saw Garcia before he changed lanes because "he was down in my blind spot." *Id.* at 54:4-10, Dkt. 33-2 at 8. There is no evidence that Zimmerman was intoxicated or under the influence of narcotics at the time of the accident[1] or that he was driving at a high rate of speed or erratically before the collision.

Garcia has not come forward with clear and convincing evidence that Zimmerman's acts or omissions "involved an extreme degree of risk" and that he "had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." *Waldrip*, 380 S.W.3d at 137. The Court grants judgment as a matter of law denying Garcia's gross negligence claim against Zimmerman.

### B.  Negligent Hiring, Retention, Training, and Supervision Claims against MSA

Garcia asserts against MSA both (1) a vicarious liability negligence claim under the doctrine of *respondeat superior*, based on Zimmerman's negligence, and (2) a direct negligence claim, based on MSA's own alleged negligent hiring, retention, training, and supervision of Zimmerman. Defendants move for summary judgment on Garcia's direct negligent hiring, retention, training, and supervision claims against MSA because he has come forward with no evidence to support these claims.

---

[1] Zimmerman testified that he underwent a drug and alcohol screening after the collision. Zimmerman Tr. at 63:14-19, Dkt. 33-2 at 9.

"Under the common law doctrine of *respondeat superior*, or vicarious liability, liability for one person's fault may be imputed to another who is himself entirely without fault solely because of the relationship between them." *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018) (citation omitted). In the employment context, "an employer is vicariously liable for its employee's negligent acts if those acts are within the course and scope of his employment." *Id.* at 131. In contrast, direct claims such as negligent hiring, supervision, training, and retention are based on the employer's own negligent conduct in creating an unreasonable risk of harm to others. *Williams v. McCollister*, 671 F. Supp. 2d 884, 888 (S.D. Tex. 2009).

To prevail on his negligent hiring, retention, training, and supervision claims, like all negligence claims, Garcia must show that (1) MSA owed a duty to Garcia, (2) MSA breached that duty, and (3) the breach proximately caused Garcia's damages. *Holcombe v. United States*, 388 F. Supp. 3d 777, 806 (W.D. Tex. 2019); *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 648 (S.D. Tex. 2016).[2]

> An employer owes a duty to its other employees and the general public to ascertain the qualifications and competence of the employees it hires, especially where the occupation at issue could cause hazard to others or requires skilled or experienced persons. Therefore, an employer is liable for negligent hiring, retention, or supervision if it hires an incompetent or unfit employee whom it knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others. In light of these principles . . . a motor carrier has a duty to take steps to prevent injury to the driving public by determining whether an applicant to drive one of its trucks is competent and qualified.

*Id.*

---

[2] The plaintiff also must establish that the employee committed an actionable tort against the plaintiff. *Holcombe*, 388 F. Supp. 3d at 806.

Garcia offers no evidence that MSA breached its duty to adequately hire, retain, train, or supervise Zimmerman. Garcia alleges that (1) Zimmerman is "incompetent, unfit, dangerous, or untrustworthy"; (2) MSA failed to investigate Zimmerman's background; (3) MSA hired Zimmerman, "who was an incompetent and unfit employee" that "create[ed] an unreasonable risk of harm to others"; and (4) MSA's "failure to investigate, screen, or supervise Defendant Zimmerman proximately caused Plaintiff's injuries and damages." Dkt. 1-6 ¶ 15. He submits no evidence to support any of these allegations.

MSA submits evidence showing that it adequately investigated Zimmerman's background before it hired him and there was no sign that he was an unfit or incompetent driver. Zimmerman received his commercial driver's license in 1972 and had more than 40 years of experience driving commercial vehicles when MSA hired him. Zimmerman Tr. at 29:23-25, Dkt. 33-2 at 2. Before MSA hired Zimmerman, it performed a motor vehicle record search, requested information from his previous employers, verified that he had at least three years of commercial driving experience, and required him to take a drug test and perform a road test, which he passed. Dkt. 33-3; Dkt. 33-4 at 6, MSA's Answers to Plaintiff's Interrogatories Nos. 14 and 15. MSA also used an electronic logging device to monitor Zimmerman's location and hours of service. Zimmerman Tr. at 49:25-52:9, Dkt. 33-2 at 3-5. This evidence supports MSA's argument that it fulfilled its duty to adequately hire, retain, train, and supervise Zimmerman.

Because Garcia comes forward with no evidence that Zimmerman was an unfit or incompetent driver or that MSA breached its duty to adequately hire, train, supervise, and retain him, the Court grants summary judgment to MSA on Garcia's negligent hiring, training, supervision, and retention claims. *Moerbe*, 2022 WL 5568119, at *3.

### C.  Gross Negligence Claim Against MSA

In the gross negligence section of his Petition, Garcia alleges that "Defendants['] acts amount to gross negligence," but he identifies only Zimmerman's acts and omissions "of making an unsafe lane change." Dkt. 1-6 ¶ 17. Garcia also incorporates the rest of his Petition, and so appears to assert gross negligence against both Zimmerman and MSA. *Id.* ¶ 16. MSA argues that Garcia does not allege a viable gross negligence claim against it.

A corporation such as MSA may not be held liable for gross negligence under Texas law unless the corporation itself (1) commits gross negligence, (2) authorized or ratified an agent's gross negligence, (3) was grossly negligent in hiring an unfit agent, or (4) committed gross negligence through the actions or inactions of a vice-principal.[3] *Mobil Oil*, 968 S.W.2d at 921-22; *Phillips*, 189 F. Supp. 3d at 656. Garcia does not allege sufficient facts or submit any evidence to show that any of these theories of recovery apply.

First, because the Court has already determined that Zimmerman was not grossly negligent, MSA could have not authorized or ratified grossly negligent conduct by him. *Phillips*, 189 F. Supp. 3d at 657. Second, because the Court grants summary judgment on Garcia's claims for negligent hiring, retention, training, and supervision, summary judgment also is proper on Garcia's gross negligence claim against MSA on those grounds. *Id.* Even had Garcia's negligent hiring claims survived, nothing in the record suggests that MSA was grossly negligent in hiring, retaining, training, or supervising Zimmerman. *See Waldrip*, 380 S.W.3d at 140 (finding that plaintiff did not prove by clear and convincing evidence that employer was aware, yet consciously indifferent to, the extreme danger caused by hiring a driver with no mechanical experience). Finally, because

---

[3] A vice-principal encompasses, *inter alia*, corporate officers. *Mobil Oil*, 968 S.W.2d at 922.

Garcia does not allege that Zimmerman was a vice-principal for MSA, or that MSA itself committed gross negligence in any way other than in negligent hiring, retention, training and supervision, Garcia's gross negligence claim fails.

### V.   Conclusion

For these reasons, Defendants' Partial Motion for Summary Judgment (Dkt. 32) is **GRANTED** and Plaintiff's claims for gross negligence and negligent hiring, retention, training and supervision are **DISMISSED WITH PREJUDICE**. Garcia's negligence claims against Defendants Zimmerman and MSA remain pending.

**SIGNED** on August 28, 2023.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE